UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

    -against-

YASSER ASHBURN, JAMAL LAURENT, and
TREVELLE MERRITT,

               Defendants.
------------------------------------------------------------X

MEMORANDUM & ORDER

11-CR-0303 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

## I. INTRODUCTION

On March 5, 2105, the Government filed a motion to quash two subpoenas served by Defendant Yasser Ashburn on the Metropolitan Detention Center ("MDC") pursuant to Federal Rule of Criminal Procedure 17. (Mot. to Quash ("Mot.") (Dkt. 384).) The Government subsequently indicated that legal counsel to the MDC and counsel for a cooperating witness who testified in this trial, ▮▮▮▮ (an inmate at MDC), join in this motion. (See Trial Tr. ("Tr.") at 2160:3-6.) The first subpoena, dated March 2, 2015, seeks records related to ▮▮, requesting "all information and records held by the Bureau of Prisons as to infractions, violations, and discipline, and, in addition thereto, [▮▮▮]'s telephone records." (Mot. at 2.) The second subpoena, dated March 4, 2015, requests records related to Defendant Ashburn, "including but not limited to 'who he was housed with in his cell and housing unit.'" (Id.) For the reasons the follow, the Government's motion is GRANTED.

## II. LEGAL STANDARD

Under Rule 17, "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). Rule 17 also provides, however, that upon a motion "made promptly, the court may quash or modify the

1

subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2) (emphasis added).

The Government argues that the question of whether a non-party subpoena complies with Rule 17 is governed by the Supreme Court's decision in United States v. Nixon, 418 U.S. 683 (1974). In Nixon, the Court observed that lower courts had generally required: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" Id. at 699-700. On this basis, the Court concluded that a party seeking to enforce a Rule 17 subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Id. at 700. Accordingly, the Government contends that both subpoenas must be quashed because each fails to meet the Nixon requirements of relevancy, admissibility, and specificity. (See Mot. at 2-3.)

In response, counsel for Defendant Jamal Laurent—on behalf of Defendant Ashburn—points to a decision in the Southern District of New York suggesting that the Nixon standard does not control in this context. (Tr. at 2147:16-20.) See United States v. Tucker, 249 F.R.D. 58 (S.D.N.Y. 2008). In that decision, U.S. District Judge Shira A. Scheindlin held that the Nixon standard was "inappropriate" where production pursuant to a Rule 17 subpoena was requested by "(A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material to his defense." Id. at 66. As a result, Judge Scheindlin concluded that a defendant "in such a situation need only show that the

2

request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." Id.

## III. DISCUSSION

As this court has already pointed out, Tucker is not binding authority.[1] (Tr. at 2146:10.) The court need not determine, however, whether Tucker is persuasive. Even if the Tucker standard were controlling, which it is not, the court would find that Ashburn has not met his burden with respect to either subpoena. A fortiori, Ashburn has also failed to meet his burden under Nixon. Since—as the following discussion illustrates—both subpoenas fail Tucker's requirement that the requests be "reasonable, construed as material to the defense," 249 F.R.D. at 66, they necessarily fail Nixon's relevancy requirement as well, see 418 U.S. at 700. Moreover, because the second subpoena is "unduly oppressive to the producing party" under Tucker, 249 F.R.D. at 66, it necessarily fails Nixon's specificity requirement. See 418 U.S. at 700 (noting that a Rule 17 subpoena is not intended to be "general 'fishing expedition'").

1. March 4, 2015, Subpoena

The second subpoena, dated March 4, 2015, requests "all information and records held by the Bureau of Prisons as related to inmate Yasser Ashburn, specifically who he was housed with in his cell, and housing unit." (See Mot. at 2.) Ashburn, however, has failed to show either that the request is material to the defense or that it is not unduly oppressive for the producing party. See Tucker, 249 F.R.D. at 66. First, Ashburn has not made a single representation to the court regarding the materiality of this request.[2] Second, the Government indicates that it conferred

---

[1] The Second Circuit has explicitly declined to decide whether Tucker or Nixon governs in these circumstances. See United States v. Barnes, 560 F. App'x 36, 40 n.1 (2d Cir. 2014) (summary order) (noting the court "need not address" the "more permissive standard" employed in Tucker, since the defendant's "speculative showing failed to meet even the 'articulable suspicion' requirement of Tucker" (citing 249 F.R.D. at 66)).

[2] This is particularly surprising, given that counsel has had access to his client for at least six hours each weekday during the course of the past two weeks.

with the MDC's legal counsel, who advised that complying with this request would be "extremely burdensome and impractical." (Mot. at 3.) As an example, the Government points out that the subpoena requests the identity of every individual with whom Ashburn has been housed during the course of his incarceration. (Id.) However, the population of the MDC "is constantly in flux, and the individuals who are in a particular housing unit are changing daily." (Id.) According to the Government, Ashburn has been in custody at the MDC since January 31, 2012—for more than three years. (Id.) As a result, the MDC claims it would be required to compile a roster for each day that Ashburn has been in the MDC—over 1,000 days—in order to determine all of the individuals with whom Ashburn has been housed with during his incarceration. (Id.) In light of the obvious burden of compiling this information, the court finds that responding to this request would be unduly oppressive for the producing party.[3] See 249 F.R.D. at 66. Consequently, the Government's motion to quash Ashburn's second subpoena is GRANTED.

2. March 2, 2015, Subpoena

With respect to the first subpoena, dated March 2, 2015, which seeks records related to ▄▄▄▄▄▄, the burden of producing the requested evidence is not immediately clear from the Government's motion.[4] Nevertheless, the court finds that Ashburn has failed to demonstrate that the information he seeks is material to his defense, even by his own terms. See Tucker, 249 F.R.D. at 66. As the Government points out, on March 2, 2015, counsel for Ashburn stated, "[The Government] want[s] to know what the relevance is of the material and how I would use it

---

[3] The court is particularly troubled by the last-minute nature of Ashburn's request. This trial began on Monday, February 23, 2015; this subpoena was not served on the MDC until Wednesday, March 4, 2015, two days before the close of the Government's case. Not only has Ashburn failed to explain the materiality of this request, but he has also failed to explain why this subpoena could not have been served well in advance of trial.

[4] In this respect, however, the court notes that ▄▄'s testimony was completed on February 26, 2015. Ashburn did not serve this subpoena, however, until March 4, 2015—two days before the close of the Government's case. (See Mot. at 2 n.2.)

4

at trial. I don't think that's relevant at this point. I think I have a right to obtain it, view it, and determine whether I can use it for an admissible basis at trial." (Tr. at 1223:12-16.) Moreover, on March 6, 2015, the court asked counsel for Ashburn to explain how the materials requested by this subpoena were material to Ashburn's defense. Counsel responded:

> The long story short is it's my position that this witness lied both big, small, and medium about almost every topic . . . . Having heard his entire testimony but also hearing the testimony about the infractions and crimes he committed while incarcerated, that's what led me to subpoena those records to see if there was more there than he testified to as there was with almost every other subject.

(Tr. at 2161:1-14.)

Thus, counsel has failed to articulate a basis upon which the requested documents may be material to his defense. See Tucker, 249 F.R.D. at 66. Instead, it is clear that Ashburn seeks "to determine whether [he] can use" the documents (Tr. at 1223:15), which he has subpoenaed "to see if there was more there" (see Tr. at 2161:1-14). Even under the "less-stringent" standard articulated in Tucker, this showing does not suffice. Id. at 66 ("Under this standard, Rule 17(c) subpoenas are not to be used as broad discovery devices, but must be reasonably targeted to ensure the production of material evidence." (emphasis added)).

Ashburn's first subpoena is further distinguishable from the request in Tucker on factual grounds. In advance of trial in Tucker, the government had provided the defendant with redacted excerpts from transcripts of one of the cooperating witness's telephone calls, which—according to the defendant—indicated that the witnesses might have been promised inducements for their testimony. 249 F.R.D. at 59-60. As a result, the defendant subpoenaed the Bureau of Prisons for the witnesses' phone records, seeking proof that they had been offered certain inducements by the government in exchange for their testimony. Id. at 66. Here, by contrast, Ashburn essentially argues that because ▮▮▮ might have lied during some of his testimony, the MDC

5

should produce all of ███'s telephone and disciplinary records in order to determine whether ███ might have lied about any other testimony, on other subjects. This falls far short of the showing made by the defendant in Tucker, both in terms of the breadth of the request as well as the basis for making it. See id. at 67 ("Where a criminal defendant has reasonable cause to believe that a cooperating witness may have been improperly induced to give inculpatory testimony, the defendant should be permitted to gather potentially material evidence.").

Thus, Ashburn's request is not reasonably targeted to ensure the production of material evidence. See id. at 66. Because Ashburn has failed to meet the requirements of Rule 17(c) as articulated in Tucker (which is not binding on this court), and therefore, as articulated in Nixon (which is binding), the Government's motion to quash the second subpoena is GRANTED.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the Government's motion to quash both subpoenas served by Defendant Ashburn on MDC is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
March 6, 2015

s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge